**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| LORINDA SOUTHARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  3:12-CV-05027-SWH |
| v. | ) | |
| | ) | |
| THE CITY OF ORONOGO, BRUCE | ) | |
| RICHARDSON and BOB RUSSELL, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S SUGGESTION IN OPPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants the City of Oronogo, Bruce Richardson and Bob Russell (hereinafter collectively the "City Defendants"), by and through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, and hereby offer the following Reply to Plaintiff's Suggestions in Opposition to Defendants' Motion for Summary Judgment.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... 3

I.    DEFENDANTS' RESPONSE TO STATEMENT OF ADDITIONAL AND
      CONTROVERTED MATERIAL FACTS. ........................................................... 5

II.   LEGAL DISCUSSION ..................................................................................... 18

   A.  Defendants are entitled to summary judgment on plaintiff's claim for retaliation under the
       FLSA as a question of material fact does not exist and defendants are entitled to judgment
       as a matter of law ........................................................................................... 18

      1.  Southard did not participate in a statutorily protected activity under the FLSA because
          Southard's actions were taken as part of and within the scope of her job duties as city
          clerk ................................................................................................................ 18
      2.  Southard cannot present sufficient evidence that there was a causal connection between
          the failure to reappoint her as City Clerk and her alleged complaints that she was
          entitled to be paid overtime ......................................................................... 21

1

   3.  The gap in time between Southard's alleged complaints and the failure to reappoint Southard as clerk further vitiates any inference of retaliation. .................................... 27

B.  Southard request to be paid overtime was not a protected activity because Southard was a bona fide administrative employee and therefore, not entitled to overtime under the FLSA 29

C.  Bruce Richardson and Bob Russell are entitled to qualified immunity ........................... 34

D.  Southard's claim for retaliation under the MHRA fails as a matter of law as Southard cannot present sufficient evidence that her alleged complaint of gender discrimination contributed to the failure to reappoint her as city clerk ...................................................... 34

CERTIFICATE OF SERVICE ................................................................................................. 37

# TABLE OF AUTHORITIES

**Cases**

*Dymond v. U.S. Postal Serv.,* 670 F.2d 93 (8th Cir.1982) ........................................................ 31

*Baucom v. Holiday Cos.*, 428 F.3d 764 (8th Cir. 2005) .............................................................. 25

*Brooks v. Tri-System, Inc.*, 425 F.3d 1109 (8th Cir. 2005) ....................................................... 4, 6

*Calder v. TCI Cablevision of Missouri,* 298 F.3d 723 (8th Cir. 2002) ...................................... 25

*Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050 (D. Minn. 2011) ................................. 30, 31

*Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970 (E.D. Mo. 2009) ... 7, 11, 12, 13, 14,
   15

*Fitzgerald v. Action, Inc.*, 521 F.3d 867 (8th Cir. 2008) ............................................................. 19

*Frevert v. Ford Motor Company*, 614 F.3d 466 (8th Cir. 2010) ............................. 7, 11, 12, 13, 14

*Grey v. City of Oak Grove, Missouri*, 396 F.3d 1031 (8th Cir. 2005) ..................................... 21, 26

*Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968 (8th Cir.1994) ..................................................... 20

*Howard v. City of Kansas City*, 332 S.W.3d 772 (Mo. Banc 2011) .......................................... 4, 5

*Johnson v. AT&T Corp.,* 422 F.3d 756 (8th Cir. 2005) .................................................... 10, 11, 20

*Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011 (8th Cir. 1999) ............................................... 25

*Kohrt v. MidAmerican Energy, Co.*, 364 F.3d 894 (8th Cir. 2004) ............................................ 20

*Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481 (E.D.N.Y. 2012) ................................. 29, 30

*McKenzie v. Renberg's, Inc.*, 94 F.3d 1478 (10th Cir. 1996) ................................................... 16

*Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034 (8th Cir.2007) ............ 7, 11, 12, 13, 14, 15

*Peterson v. City of Plymouth,* 60 F.3d 469 (8th Cir.1995) ........................................................ 4, 5

*Ray v. City of Oak Grove, MO*, 396 F.3d 1031 (8th Cir. 2005) .................................................. 16

*Scroggins v. Univ. of Minnesota*, 221 F.3d 1042 (8th Cir. 2000) ................................... 20, 21, 24

*Spinden v. GS Roofing Prods. Co., Inc.,* 94 F.3d 421 (8th Cir.1996) ........................................ 27

Case 3:12-cv-05027-SWH   Document 69   Filed 12/20/12   Page 3 of 37

*Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034 (8th Cir. 2007) ............................................ 19

*Wallace v. DTG Operations, Inc.,* 442 F.3d 1112 (8th Cir.2006) ................................................ 20

*Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854 (Mo. App. E.D. 2009) ........................ 32

**Statutes**

29 C.F.R. § 541.202(c)................................................................................................................ 31

29 C.F.R. §541.202 ..................................................................................................................... 27

## I. DEFENDANTS' RESPONSE TO STATEMENT OF ADDITIONAL AND CONTROVERTED MATERIAL FACTS.

1. Controverted to the extent that plaintiff's statement of fact implies that plaintiff complained to the mayor, board of alderman and city attorney of alleged wage and hour violations and made such alleged complaints to each of the parties. Plaintiff did not approach the board of aldermen regarding payment of her overtime until September 13, 2010. September 13, 2010 Minutes of Board of Aldermen, **Exhibit P** to the City Defendants' Motion for Summary Judgment.

2. Controverted to the extent that plaintiff's statement of fact implies that plaintiff complained to the mayor, board of alderman and city attorney of gender or sex discrimination on August 24, 2010, August 25, 2010, September 15, 2010, September 16, 2010, October 11, 2010 and November 8, 2010. The first time that Southard made any complaint of gender discrimination to the board of alderman was on October 11, 2010, and the last date that Southard made any complaint of gender discrimination to the board of aldermen was November 8, 2010— five months before Southard's employment with the City of Oronogo ceased. Deposition of Lorinda Southard, p. 174 ll. 14-18 attached hereto as **Exhibit A**

3. Uncontroverted.

4. Uncontroverted.

5. Uncontroverted.

6. Controverted. The minutes prepared by Southard are not verbatim minutes of what occurred at the city council meetings, and Ms. Owings[1] does not recall using the term "overtime" to refer to the hours accrued by Ms. Southard. **Exhibit A,** Deposition of Lorinda Southard, p. 174 ll. 9-18; Affidavit of Cyndi Jennings attached hereto as **Exhibit C**.

---

[1] Cyndi Owings was recently married and her name is now Cyndi Jennings.

Case 3:12-cv-05027-SWH   Document 69   Filed 12/20/12   Page 5 of 37

7.      Uncontroverted.

8.      Controverted to the extent the statement of fact implies that Southard discussed with Investigator Huggins all of her job duties as city clerk.  Southard did not disclose to Investigator Huggins that she had a credit card where she was able to make purchases on behalf of the City of Oronogo; that she was the signatory on the Atwoods account; that she had the ability to prepare a proposed budget for the administrative office for the City of Oronogo; and that she was a signatory on the court's check registrar.  **Exhibit A,** Deposition of Lorinda Southard, p. 242 ll. 10 – p. 243 ll. 23.

9.      Defendant objects to this statement of fact on the basis that the purposed statement of fact impermissibly relies on hearsay as it recites out of court statements that Investigator Huggins allegedly made to Southard during a telephone call, and therefore, is inadmissible.  *See Brooks v. Tri-System, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (stating that affidavit that contained hearsay could not be used to defeat summary judgment).  Defendant further objects to this statement of fact on the basis that it calls for a legal conclusion and therefore, is inadmissible at trial.  *See Peterson v. City of Plymouth,* 60 F.3d 469, 475 (8th Cir.1995) (stating "[E]xpert opinion testimony is not admissible regarding questions of law. Legal conclusions are for the court to make."  *See also Howard v. City of Kansas City*, 332 S.W.3d 772 (Mo. Banc 2011) (recognizing that attorney's opinion that act was illegal generally was not admissible).

10.     Defendant objects to this statement of fact on the basis that the purposed statement of fact impermissibly relies on hearsay as it recites out of court statements of Chuck Brown the city attorney, and therefore, is inadmissible.  *See Brooks,* 425 F.3d at 1111 Defendant further objects to this statement of fact on the basis that it calls for a legal conclusion and

therefore, is inadmissible at trial. *See Peterson,* 60 F.3d at 475; *see also Howard*, 332 S.W.3d 772 .

11.     Defendant objects to this statement of fact on the basis that the statement of fact impermissibly relies on hearsay as it recites out of court statements of Chuck Brown the city attorney, and therefore, is inadmissible. *Brooks*, 425 F.3d at 1111. Defendant further objects to this statement of fact on the basis that it calls for a legal conclusion and therefore, is inadmissible at trial. *See Peterson,* 60 F.3d at 475; *see also Howard*, 332 S.W.3d 772.

12.     Defendant objects to this statement of fact on the basis that it calls for a legal conclusion and therefore, is inadmissible at trial. *Peterson,* 60 F.3d at 475; *see also Howard*, 332 S.W.3d 772.

13.     Controverted.   Plaintiff testified that the sequence of events identified in the October 11, 2012 meetings of the board of alderman are not a verbatim sequence of events and she does not recall the sequence of events at the October 11, 2012 meeting. **Exhibit A**, Deposition of Lorinda Southard, p. 174 ll. 9-18. Defendant further states that Southard claims she felt threatened by this statement as it was made after she allegedly complained of gender discrimination.   Plaintiff's supplemental Responses to Defendant's Interrogatories No. 21, **Exhibit L** to Defendant's Motion for Summary Judgment.  However, according to the October 11, 2010 meeting minutes reveal that Southard did not complain of gender discrimination until after Mr. Richardson asked Southard if she liked her job.  10-11-10 Minutes of Meeting, **Exhibit R** to Defendant's Motion for Summary Judgment.   Furthermore, Bruce Richardson asked Southard if she liked her job because he had spoken with other city clerks about whether they were paid overtime and had also asked them if they liked their jobs.  Deposition of Bruce Richardson, p. 56 l. 7 – p. 57 l. 12 attached hereto as **Exhibit B**.  Finally, defendant objects to

this statement of fact to the extent that Southard did not identify Mr. Richardson's question of whether Southard liked her job as a basis for her claim of retaliation under the FLSA.  See Plaintiff's Responses to Defendant's Interrogatories No. 22, **Exhibit J** to Defendant's Motion for Summary Judgment.

14.     Uncontroverted, but irrelevant and immaterial.    Southard claims she felt threatened by this statement after she complained of gender discrimination.    Plaintiff's supplemental Responses to Defendant's Interrogatories attached as **Exhibit L** to Defendant's Motion for Summary Judgment.  However, according to the October 11, 2010 minutes Southard did not complain of gender discrimination until after Mr. Richardson asked Southard if she liked her job.    10-11-10 Minutes of Meeting, **Exhibit R** to Defendant's Motion for Summary Judgment.

15.     Uncontroverted that Bruce Richardson indicated at the October 25, 2010 meeting of the board of aldermen that Southard had incorrectly stated in the October 10th minutes that Alderman Richardson stated that other city clerks spoke highly of Oronogo's city clerk.  October 25, 2010 minutes of City of Oronogo attached hereto as **Exhibit H**.

16.     Defendant objects to this statement of fact on the basis that the statement of fact impermissibly relies on hearsay.  Presumably, Southard was not present at city hall when members of the board of alderman allegedly began asking other employees about Southard's whereabouts when she was not at work, and Southard apparently relies on the out of court statements of these unknown city employees that were asked about her whereabouts as the basis for her purported knowledge that the aldermen were asking about her whereabouts.  *See Brooks*, 425 F.3d at 1111.  Defendant further states that this statement of fact is controverted to the extent that the board of aldermen began inquiring as to Southard's whereabouts after Southard asked to

be paid for her overtime hours. It is not unusual for members of the board of aldermen, when present at city hall, to inquire as to the whereabouts of an absent city employee, and members of the board of alderman made such inquiries both before and after Southard allegedly requested that she be paid for her overtime hours. **Exhibit C,** Affidavit of Cyndi Jennings.

17. Controverted to the extent that the statement of fact implies that the board of aldermen questioned the finances of the City in retaliation for Southard's alleged complaints of gender or wage and hour violations. Southard told city treasurer Cyndi Owings that Owings did not need to attend various meetings of the board of alderman to present the treasurer report which was prepared by Cyndi Owings as part of her job duties as city treasurer. **Exhibit C**, Affidavit of Cyndi Jennings. Southard told Owings that she would present the treasurer report to the board of aldermen at the meetings of the board of aldermen, and Owings was not present at the meetings to answer questions related to the treasurer's report. **Exhibit C**, Affidavit of Cyndi Jennings.

18. Defendant objects to the statement of fact as conclusory and speculative as Southard's statement that the City Defendants "got hostile" is not supported by probative evidence sufficient to avoid summary judgment. *Frevert v. Ford Motor Company*, 614 F.3d 466, 473-74 (8th Cir. 2010); *see also Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970, 1001 (E.D. Mo. 2009) citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007) (stating "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Southard fails to state how the City Defendants were hostile.

19. Defendant objects to the statement of fact as conclusory and speculative as Southard's statement that the City Defendants "began raising issues" is not supported by

probative evidence sufficient to avoid summary judgment. *Frevert*, 614 F.3d at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007). Southard conclusory statement fails to state what issues were raised by the City Defendants.

20. Uncontroverted.

21. Uncontroverted.

22. Uncontroverted.

23. Uncontroverted.

24. Uncontroverted.

25. Uncontroverted.

26. Uncontroverted.

27. Uncontroverted, but irrelevant and immaterial.

28. Controverted . At the meeting of the board of aldermen when the board voted not to reappoint Southard as city clerk there was a discussion during closed session that Southard was not being reappointed because of difficulties getting along with fellow personnel including Jeff Fries and Cyndi Owings, dissention among personnel, failure to attend meetings of the city clerk's association, and complaints from the public. Handwritten notes of Lorinda Southard attached hereto as **Exhibit D**; and Deposition of Ryan Bennett, p. 14 l. 14 –p. 15 l. 10 attached hereto as **Exhibit E**. See also plaintiff's response to SOF 114. The mayor testified that he may not have heard these discussions about why Southard was not reappointed because he was mad that the board voted against his reappointment of Lorinda Southard. Deposition of Robert Pearish, p. 52 l. 2 – p. 55 l. 16 attached as **Exhibit F**.

29. Uncontroverted that Lorinda Southard was the only individual nominated by Mayor Robert Pearish that was not approved by the board of aldermen at the April 2011 meeting.

30. Uncontroverted, but irrelevant and immaterial. Defendant further states that prior to the board of aldermen voting against the appointment of Southard as city clerk, members of the board of alderman had complained to the mayor about Southard's attitude but the mayor put it off as part of the job. **Exhibit F,** Deposition of Robert Pearish, p. 37 l. 18 – p. 38 l. 2 and p. 38 l. 18-24.

31. Uncontroverted, but irrelevant and immaterial. Defendant further states that Bob Russell did not take his complaints about Southard to Mayor Pearish (Southard's immediate supervisor) because Bob Russell understood that there was a business relationship between the Mayor's family and Southard's family, and Russell did not believe that the mayor would take any action against Southard. Deposition of Bob Russell, p. 44. l. 23 – p. 49. l. 3 attached hereto as **Exhibit G**. Lester Southard is Lorinda Southard's ex-brother-in-law and Mayor Pearish's company subcontracts with Lester Southard's business Southard Construction. **Exhibit F,** Deposition of Robert Pearish, p. 8 l. 16 – p. 9 l. 5.

32. Uncontroverted, but irrelevant and immaterial.

33. Uncontroverted, but irrelevant and immaterial.

34. Uncontroverted, but irrelevant and immaterial.

35. Uncontroverted, but irrelevant and immaterial.

36. Uncontroverted, but irrelevant and immaterial.

37. Uncontroverted.

38. Controverted. Lorinda Southard told Cyndi Owings on one occasion that Owings was dressed like a slut. **Exhibit C**, Affidavit of Cyndi Jennings. On another occasion, Southard

told Owings that when Owings wore a pair of white pants to work Southard could see through her pants, and Southard stated that Owings must have been wearing thong underwear because Southard could not see Owings' underwear. **Exhibit C**, Affidavit of Cyndi Jennings. Southard did not make this statement at the time Owings was wearing the white pants but made it several days later. **Exhibit C**, Affidavit of Cyndi Jennings.

39.     Controverted. In addition to telling Cyndi Owings that she was wearing a pair of white pants that were see through, plaintiff on another occasion also told Cyndi Owings that she was dressed like a slut. **Exhibit C**, Affidavit of Cyndi Jennings. Cyndi Owings then spoke with Bob Russell, Bruce Richardson and Kobie Langford and relayed Lorinda Southard's statement that she was dressed like a slut to these members of the board of aldermen. **Exhibit C,** Affidavit of Cyndi Jennings.

40.     Uncontroverted, but irrelevant and immaterial. Merely discrediting an employer's asserted reasoning for terminating an employee and questioning the adequacy of an employer's investigation is not sufficient to defeat an employer's asserted reasons for terminating an employee. *See Johnson v. AT&T Corp.,* 422 F.3d 756, 763 (8th Cir. 2005).

41.     Controverted to the extent that plaintiff claims that Defendant Russell testified that his knowledge of whether plaintiff had issues with the police chief was based on nothing more than pure speculation. Defendant Russell testified that his belief that Southard failed to supervise and get along with fellow personnel came from interactions and statements by Cyndi Owings. **Exhibit G**, Deposition of Robert Russell, p. 31 ll. 1-24. Cyndi Owings had conversations with Bob Russell wherein they discussed Southard's interactions with other employees. **Exhibit C**, Affidavit of Cyndi Jennings.

42.     Uncontroverted, but irrelevant and immaterial.  Merely discrediting an employer's asserted reasoning for terminating an employee and questioning the adequacy of an employer's investigation is not sufficient to defeat an employer's asserted reasons for terminating an employee.  *See Johnson,* 422 F.3d at 763.

43.     Uncontroverted, but irrelevant and immaterial.  Merely discrediting an employer's asserted reasoning for terminating an employee and questioning the adequacy of an employer's investigation is not sufficient to defeat an employer's asserted reasons for terminating an employee.  *See Johnson,* 422 F.3d at 763.

44.     Uncontroverted.

45.     Uncontroverted.

46.     Controverted.  When Southard initially was appointed as city clerk, Patrick Tuttle then a member of the board of aldermen told Southard that she needed to attend meetings of the city clerk's association.  **Exhibit G**, Deposition of Robert Russell, p. 63 ll. 12 – p. 64 ll. 5; and **Exhibit B**, Deposition of Bruce Richardson, p. 44 ll. 17 – p. 45 ll. 12.

47.     Uncontroverted, but irrelevant and immaterial.

48.     Uncontroverted.

49.     Defendant objects to the statement of fact as conclusory and speculative as Southard's statement that the mayor made a determination of whether Ms. Lacey was complying with City policies and procedures is not supported by probative evidence sufficient to avoid summary judgment.  *Frevert,* 614 F.3d  at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

50.     Uncontroverted.

51.     Defendant objects to the statement of fact as conclusory and speculative that Southard did not have authority to formulate, affect, interpret or implement policies and procedure as such statement is not supported by probative evidence sufficient to avoid summary judgment. *Frevert,* 614 F.3d at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

52.     Uncontroverted.

53.     Uncontroverted.

54.     Uncontroverted.

55.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment. *Frevert,* 614 F.3d at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

56.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment. *Frevert,* 614 F.3d at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

57.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment. *Frevert,* 614 F.3d at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

58.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment.   *Frevert,* 614 F.3d  at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

59.     Controverted. As city clerk, Southard served as the department head for the administrative department for the City of Oronogo, Missouri and would prepare a proposed budget for her department. **Exhibit A**, Deposition of Southard, p. 230 l. 10-18.  Southard would make recommendations, in her proposed budget, to the Mayor and Board of Alderman about how much money was needed for the administrative department of the City of Oronogo.  **Exhibit A**, Deposition of Southard, p. 231 l. 8-15.  These recommendations would include proposed expenditures for office equipment, overtime, office supplies or payroll that would be needed for use in her department. **Exhibit A**, Deposition of Southard, p. 231 l. 8-23.

60.     Uncontroverted.

61.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment.   *Frevert,* 614 F.3d  at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

62.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment.   *Frevert,* 614 F.3d  at 473-74; *see also*

*Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

63.    Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment.    *Frevert,* 614 F.3d   at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

64.    Uncontroverted.

65.    Uncontroverted, but irrelevant and immaterial.

66.    Controverted to the extent that the statement of fact implies that purchases made on the City issued Visa credit card for travel had to be approved by the board of aldermen and/or the mayor prior to the purchase being made.  These purchases by Southard were not submitted for approval prior to the purchases being made.  **Exhibit A,** Deposition of Lorinda Southard, p. 206 l. 6 – p. 207 l. 10

67.    Uncontroverted, but irrelevant and immaterial.

68.    Controverted. Southard purchased supplies for the office based on what she felt the need was for office supplies for individuals to perform their jobs.  **Exhibit A**, Deposition of Lorinda Southard, p. 209 l. 8-20.  Southard could and would prepare and submit purchase orders requesting the purchase of supplies or equipment that Southard thought were necessary to perform her job and that Southard believed needed to be purchased.  **Exhibit A**, Deposition of Lorinda Southard, p. 210 l. 2-9.

69.    Uncontroverted.

70.    Uncontroverted.

71.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment.   *Frevert,* 614 F.3d  at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

72.     Defendants object to this statement of fact to the extent that it is not a statement of fact but simply a conclusion of law by Southard as such statement is not supported by probative evidence sufficient to avoid summary judgment.   *Frevert,* 614 F.3d  at 473-74; *see also Donnelly,* 635 F. Supp. 2d at 1001 citing *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir.2007).

73.     Controverted.  Southard would on occasion address customer complaints and then inform the mayor about the customer complaint.  **Exhibit F,** Robert Pearish, p. 23 l. 4-10; p. 57 l. 22 – p. 58 l. 7.  When a resident came to city hall and complained that they had been charged a late fee on their utility bill, Southard dealt with the complaint prior to contacting the mayor and informing him of the resident's complaint.  **Exhibit F,** Robert Pearish, p. 56 l. 22 – p. 57 l. 21.

74.     Controverted.  Southard would on occasion address customer complaints and then inform the mayor about the customer complaint.  **Exhibit F,** Robert Pearish, p. 23 l. 4-10; p. 57 l. 22 – p. 58 l. 7.

75.     Uncontroverted.

76.     Controverted.   Lorinda Southard told Cyndi Owings that she was dressed inappropriately without speaking to the mayor prior to informing Ms. Owings that she was dressed inappropriately.  **Exhibit F,** Robert Pearish, p. 55 l. 21 - p. 56 l. 15.

## II.    LEGAL DISCUSSION

### A.    Defendants are entitled to summary judgment on plaintiff's claim for retaliation under the FLSA as a question of material fact does not exist and defendants are entitled to judgment as a matter of law.

The City Defendants' motion for summary judgment on Southard's claim for retaliation under the FLSA is essentially a two fold inquiry. First, did Southard participate in a statutorily protected activity when she requested that the City pay her overtime she allegedly accrued over a 16 month period? If the answer to this question is no, Southard cannot maintain a cause of action under the FLSA for retaliation, and the Court's inquiry can cease as this issue alone is dispositive of Southard's claim. However, if the Court finds that Southard did participate in a protected activity, the next issue for resolution is whether there was a causal connection between the failure to reappoint Southard as city clerk and Southard's request to be paid overtime. Again, if the answer to this question is no, Southard's claim for retaliation fails. The uncontroverted material facts before the Court reveal that the answer to each of these questions is in fact no.

### 1.    Southard did not participate in a statutorily protected activity under the FLSA because Southard's actions were taken as part of and within the scope of her job duties as city clerk.

The City Defendants seek summary judgment in this matter in part because the uncontroverted facts establish that Southard's alleged "complaint" related to overtime pay was not a statutorily protected activity. In order to maintain a cause of action under the FLSA, an employee must engage in a protected activity. *Ray v. City of Oak Grove, MO*, 396 F.3d 1031, 1034-35 (8th Cir. 2005). The "protected activities" are listed explicitly in the statute: filing a complaint, instituting or testifying in a proceeding, or serving on a committee. *Id*. In order to engage in an enumerated protected activity, the employee must step outside his or her role of representing the company and either file or threaten to file an action adverse to the employer, actively assist other employees in asserting FLSA rights or otherwise engage in activities that

reasonably could be perceived as directed toward the assertion of rights protected by the FLSA. *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996).

As a preliminary matter, it should be noted that from March 2009 until August 2010, it was Southard and not the City Defendants that chose not to pay Southard overtime in the week in which it was accrued. It is undisputed in this matter that shortly after Southard was hired by the City of Oronogo, she approached Mayor Pearish and asked if she could bank overtime hours that she worked rather than being paid for the overtime. Southard banked overtime hours for a period of sixteen months from March 2009 until June/July 2010 without ever requesting that the overtime be paid, without telling anyone with the City that she believed the City was violating the FLSA by failing to pay her overtime, and without seeking approval from the board of aldermen to bank overtime hours. Southard finally approached Mayor Bob Pearish in June/July 2010 requesting that she be paid over $3000.00 for the hours she had allegedly accrued. In her response, Southard argues that her actions in approaching the Mayor in June/July 2010 and requesting that her overtime be paid was not and is not consistent with her job duties as city clerk. However, the facts belie this contention.

It is undisputed that one of Southard's job duties as city clerk included processing payroll. (SOF 26). As part of this job duty, Southard was unable to approve overtime, but rather would submit time sheets to the mayor for his approval including any overtime. (SOF 27). Once the mayor approved the time sheets, Southard would cut payroll checks to employees. (Plaintiff's SOF 69). Had Southard chosen to do so, she could have included her overtime on her time sheets for approval by the mayor (and ultimately payment by the City) in the week in which the overtime was worked. (SOF 65). However, Southard chose not to do so and instead waited sixteen months while she accrued over $3,000 in overtime before seeking approval from the

Mayor to pay herself the overtime she had accrued. When Southard ultimately decided that she wanted to be paid, consistent with the payroll process and her job duties, Southard approached Mayor Pearish for approval of the payment of her overtime.

When Southard approached Mayor Pearish requesting that her overtime be paid, she did not do so because she believed the City was violating the FLSA. Rather, Southard testified that she approached Mayor Pearish in June/July 2010 and requested that she be paid half the overtime because she needed the money and she was concerned that she was accruing too many hours. Quite simply, Southard was not requesting overtime pay because she believed the City Defendants were in violation of the FLSA, and Southard's action in simply requesting payment of her overtime does not give rise to an inference that the City Defendants knew that Southard was "filing a complaint" under the FLSA.

Not only was seeking the Mayor's approval to pay the overtime consistent with Southard's job duties, her actions after the request was presented to the board of aldermen in September 2010 also were consistent with her job duties. In her response, Southard points to her conversation with an investigator at the Department of Labor as actions by Southard that were outside her normal job duties. However, it is undisputed that Southard contacted the Department of Labor because she was asked to do so by Mayor Pearish—her immediate supervisor—after her request to be paid for half her overtime was presented to the board of aldermen. (SOF 75 & 76). Southard did not personally initiate or voluntarily contact the Department of Labor, or contact the Department of Labor before requesting that she be paid overtime. Rather, the uncontroverted facts establish that she did so because she was instructed to contact the Department of Labor by the mayor. Southard was not "stepping outside" her normal job duties and acting adverse to the City. Rather, Southard's actions were taken as a result of a direct

request from her immediate supervisor the mayor, and were taken as part of her employment with the City.

Although Southard argues that her actions were outside her normal job duties as city clerk, the uncontroverted facts establish that Southard's actions were consistent with and taken as part of her job as city clerk, and summary judgment is appropriate as Southard did not engage in a protected activity.

> **2.** **Southard cannot present sufficient evidence that there was a causal connection between the failure to reappoint her as city clerk and her alleged complaints that she was entitled to be paid overtime.**

As set forth in their motion for summary judgment, for purposes of their motion the City Defendants assume that Southard is able to establish a prima facie case of retaliation under the FLSA. The City defendants, consistent with the *McDonnell Douglas* burden-shifting framework, identified non-retaliatory reasons why the board of aldermen voted not to reappoint Southard as city clerk. These reasons included the fact that Southard failed to attend meetings of the city clerks association; Southard was impolite and/or rude when interacting with the public; and Southard had issues getting along with fellow employees of the City. Once the City Defendants made this showing, the burden returned to Southard to present evidence that: (1) creates a question of fact as to whether defendant's reason was pre-textual; and (2) creates a reasonable inference that defendant acted in retaliation. *See Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). Southard has failed to meet this burden even at the summary judgment stage.

It is noteworthy in analyzing Southard's claim for retaliation that Southard does not allege and fails to present any evidence in her response that the City Defendants provided inconsistent reasons for refusing to reappoint Southard as city clerk. *See Fitzgerald v. Action,*

*Inc.*, 521 F.3d 867, 873 (8th Cir. 2008) (stating that inconsistent reasons as to basis for termination raises inference of discrimination).  Rather, the members of the board of aldermen have consistently stated that Southard was not reappointed due to her inability to get along with fellow employees; difficulties in dealing with the public including being rude; and failure to attend meetings of the city clerk's association.  These reasons were discussed in closed session at the April 11, 2011 meeting where Southard was not reappointed (SOF 114), and continue to be the reasons the City Defendants have cited as a basis for not reappointing Southard.

In her response, Southard also does not allege that the foregoing reasons were not and are not sufficient to support the City Defendant's refusal to reappoint Southard to the position of city clerk.  Rather, Southard's response to the City Defendant's non-retaliatory reasons for voting not to reappoint Southard as city clerk is essentially an assault on two fronts.[2]  First, Southard repeatedly denies, through her own self-serving testimony, that the incidents described by the members of the board of alderman as a basis for voting not to reappoint Southard simply did not occur or did not occur in the manner in which the City Defendants claim.  The second prong of Southard's attack is that the City Defendants, specifically Bob Russell and Bruce Richardson did not conduct an adequate investigation into the allegations, and therefore, Southard argues the reasons given by the City Defendants must be considered pretext.  Each of these positions by Southard however is without merit.

"The ultimate question in any retaliation case is whether the employer's adverse action against the employee was motivated by retaliatory intent." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir.2006).  The 8th Circuit has repeatedly recognized that the showing of

---

[2] Southard also addresses the issue of whether her oral workplace complaints are actionable.  This issue was extensively briefed in the City Defendants' motion for judgment on the pleadings Doc. Nos. 38 and 39.  Rather than submit additional briefing on this issue the City Defendants incorporate the arguments set forth in its Motion for Judgment on the Pleadings (Doc. No. 38) and Suggestions in Support (Doc. No. 39) as well as its Reply to Plaintiff's Suggestions in Opposition (Doc. No. 48).

pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005); *Kohrt v. MidAmerican Energy, Co.*, 364 F.3d 894, 898 (8th Cir. 2004); *Scroggins v. Univ. of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000); *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 972 (8th Cir.1994). Similarly, attacking the adequacy of an employer's investigation is not sufficient to defeat an employer's asserted reasons for terminating an employee. *Johnson,* 422 F.3d 756, 763 (8th Cir. 2005). The question is not whether plaintiff actually did what he was accused of doing or whether the discharge was warranted; rather, the relevant inquiry to resolve this question is whether the employer *believed* that the employee was guilty of the conduct justifying discharge." *See e.g. Scroggins*, 221 F.3d at 1045 and *Grey v. City of Oak Grove, Missouri*, 396 F.3d 1031, 1035 (8th Cir. 2005).

The uncontroverted facts establish that the City Defendants believed that Southard had engaged in the conduct that was identified as the basis for not reappointing Southard as city clerk. As set forth in their motion, Bob Russell and Bruce Richardson both testified that they had a conversation with Cyndi Owings wherein Ms. Owings told Mr. Russell and Mr. Richardson that Lorinda Southard told her she was dressed like a slut. (SOF 100)[3]. Bob Russell felt this comment by Southard was inappropriate (SOF 101) and Bruce Richardson felt that Southard failed to properly supervise Ms. Owings by telling her she was dressed like a slut. (SOF 102). Both Bob Russell and Bruce Richardson identified this specific incident as an example of Southard's difficulties in getting along with fellow employees and evidence of Southard's improper supervision of employees. (SOF 99). Richardson and Russell also

---

[3] Plaintiff's conclusory, self-serving and unsupported response to this SOF that this reason was simply pretext is insufficient to defeat the City Defendants' properly supported motion for summary judgment.

identified this statement by Southard to Ms. Owings as one of the reasons they voted not to reappoint Southard as well.  (SOF 102).

In her response, Southard's only response is to deny that she told Ms. Owings that she was dressed like a slut.  However, it is undisputed that Ms. Owings had a conversation with Mr. Russell, Mr. Richardson and Kobie Langford as well who also was a member of the board of alderman at the time wherein Owings told them that Southard told her she was dressed like a slut.  (Resp. to Plaintiff's SOF 38 & 39; *See also* **Exhibit C**, Affidavit of Cyndi Jennings).  Other then her self-serving denial, Southard does not present any evidence to suggest that her conversation with Ms. Owings did not occur or that Ms. Owings did not discuss the incident with Russell and Richardson.  Nor does Southard present any evidence that Russell and Richardson did not believe or should not have believed Ms. Owings when she told them that Southard told her she was dressed like a slut.

Ms. Owings also had a conversation with Mr. Russell and Mr. Richardson wherein she told them that Lorinda Southard had difficulty getting along with other city employees including Chief of Police Jeff Fries and Southard was rude to the public.  (Resp. to Plaintiff's SOF 41; **Exhibit C**, Affidavit of Cyndi Jennings).  While Bob Russell admitted that he did not personally observe Southard's interactions with Chief Fries, Bob Russell did relate conversations that he had with Cyndi Owings about Southard's difficulties getting along with Chief Fries—again a conversation Ms. Owings has confirmed occurred—as the basis for his understanding.  (Resp. to Plaintiff's SOF 41; **Exhibit C**, Affidavit of Cyndi Jennings).  Josh Stiffler, a member of the board of aldermen who also voted against Southard's appointment, testified that employees of the city including Ms. Owings and Jeff Fries came to meetings of the board of aldermen and complained about Southard during closed session—both facts that are admitted by Southard in

response to the City Defendants' Motion. (SOF 107 & 108). Quite simply, adequate facts existed for the City Defendants to form a belief that Southard had difficulty getting along with fellow employees and did not supervise employees appropriately.

Not only did the City Defendants believe Southard had difficulties getting along with co-employees, the City Defendants also believed that Southard was rude to the public—another reason given for not reappointing Southard. (SOF 98 & 109). Josh Stiffler, a member of the board of aldermen, experienced just such incident when Southard was short with Stiffler's son at city hall before Stiffler became a member of the board of aldermen. (SOF 110). Stiffler voted against Southard's reappointment as city clerk, in part, because Southard was borderline rude to customers of the City as demonstrated by Southard's interaction with Stiffler's son. (SOF 109).

In addition to Stiffler's experience, Bob Russell and Bruce Richardson each identified Southard's interaction and handling of a complaint by a customer of the city related to a late fee charge on a utility bill. It is undisputed that Southard told the utility clerk to charge the customer the late fee when the late fee should not have been charged (SOF 95). It is also undisputed that Kobie Langford, then a member of the board of aldermen, requested that Southard be written up for this incident. (SOF 96). Both Bob Russell and Bruce Richardson testified that they did not believe that Southard handled this incident properly and voted against Southard's reappointment, in part, based upon this incident. (SOF 97 & 98).

In her response, Southard points to the fact that Mayor Pearish did not write Southard up for this incident as evidence that the late fee incident was simply pretext. However, Southard ignores the fact that Kobie Langford, who was not a member of the board of aldermen at the time Southard was not reappointed and therefore did not cast a vote not to reappoint Southard, believed that Southard handled the situation so poorly that he requested that the Mayor write

Southard up for the incident. (SOF 95 & 96). The fact that the Mayor did not write Southard up for this incident when requested to do so by one of the aldermen does not establish that the cited reason was pretext as suggested by Southard.

Southard also relies on the testimony of Mayor Robert Pearish that he was happy with Southard's job performance to argue that the City Defendants proffered reasons for not reappointing Southard were merely pretext. The City Defendants do not dispute that Mayor Pearish was happy with Southard's job performance as Southard was the eyes and ears of the Mayor at city hall. However, much like the mayor, Southard ignores the fact that members of the board of aldermen complained to Mayor Pearish regarding Southard's attitude—an attitude which the mayor simply put off as part of the job. (SOF 94). Additionally, Southard ignores the fact that Bob Russell did not bring his concerns about Southard's job performance to the Mayor because Russell understood that Southard's family had a business relationship with the Mayor's family. (Resp. to Plaintiff's SOF 31). Russell believed that due to this business relationship the Mayor would not do anything in response to Russell's complaints about Southard. (Resp. to Plaintiff's SOF 31). Russell's reasoning seems justified in light of the fact that the Mayor simply put off complaints about Southard's attitude and chose not to write Southard up when requested to do so by Kobie Langford.

The Mayor's testimony that he was happy with Southard's job performance and that he did not write Southard up in response to the late fee complaint does not establish and does not create an inference of retaliation in not reappointing Southard. Rather, the Mayor's testimony simply illustrates a difference of opinion between the mayor and the board of alderman regarding Southard's job performance—a job performance the board of aldermen believed justified not reappointing Southard as clerk. Such political discourse between executive and legislative

branches of government is not unusual, and such political comment does not establish that the board of aldermen's reasons for not reappointing Southard was pretext.

The anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace. *See Scroggins*, 221 F.3d at 1045. Here, the facts before the Court establish that the City Defendants believed that Southard was disrupting the workplace by telling Owings, an employee Southard supervised, that she was dressed like a slut; that Southard was rude to customers of the City of Oronogo and that Southard had difficulty getting along with other employees of the city. Southard's self-serving denials are insufficient to create a question of material fact precluding summary judgment in this matter, and summary judgment in favor of the City Defendants is proper.

> **3.    The gap in time between Southard's alleged complaints and the failure to reappoint Southard as clerk further vitiates any inference of retaliation.**

As set forth in the City Defendant's motion, a gap in time between the protected activity and the adverse employment action 'weakens the inference of retaliation that arises when a retaliatory act occurs." *Calder v. TCI Cablevision of Missouri,* 298 F.3d 723, 731 (8th Cir. 2002). In her response, Southard's sole response to the gap of time between her complaints of alleged discrimination and violation of the FLSA is to argue that there was no gap after Southard allegedly complained of gender discrimination and hour and wage violations, because the City Defendants allegedly began to question where Southard was when she was not at work, began to be hostile toward Southard, and began asking her questions at board meetings about items that were not part of her job description. It is noteworthy that Southard fails to identify when these alleged "retaliatory acts" took place.

As a preliminary matter, the actions that Southard identifies as alleged retaliatory conduct are, as a matter of law, not sufficient to be considered an adverse employment action. An adverse employment action must be one that produces a material employment disadvantage. *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir. 1999). Minor changes in job duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantages do not satisfy this requirement. *Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005). Termination, cuts in pay or benefits or changes that affect an employee's future career prospects are significant enough to meet this standard. *Kerns*, 178 F.3d at 1016-17. Therefore, the conduct of which Southard now complains is not a basis for her claim of retaliation and is irrelevant.

Not only does the conduct Southard identifies as retaliatory insufficient to constitute an adverse employment action, the conduct at issue was not in fact retaliatory. Southard seems to suggest that there is some impropriety or hostility in an employer simply asking another employee about the whereabouts of an absent employee. However, it was not and is not unusual for members of the board of aldermen to ask where any employee is at when the employee is not at work. (Resp. to Plaintiff's SOF 16). Furthermore, questions by the board of alderman regarding the finances of the City that were not within Southard's job description were likely the result of Southard telling Cyndi Owings that Southard would present the city treasurer's report at meetings of the board of aldermen and that Owings did not need to attend those meetings. (Resp. to Plaintiff's SOF 17). Finally, Southard's conclusory statement that the board of aldermen got hostile toward Southard after she asked to be paid overtime is simply insufficient to establish retaliatory conduct by defendants.

Here, the alleged adverse employment action was the refusal to reappoint Southard as city clerk in April 2010 not the board questioning where Southard was when not at work or asking her questions about items that were not within her job description. The uncontroverted facts establish that the time gap between Southard's initial complaint in August 2009 and the vote to not reappoint her in April 2010 was nearly ten (10) months. Moreover, the gap in time between her last complaint (November 2009) and the decision not to reappoint her as city clerk was over five (5) months. This gap in time is sufficient to defeat an inference of retaliation under the FLSA. *See Grey*, 396 F.3d at 1035.

Summary judgment on Southard's claim for retaliation under the FLSA is appropriate as Southard cannot establish a causal connection between the City Defendant's voting not to reappoint Southard as city clerk and Southard's alleged complaints that she was not being paid overtime.

**B.** **Southard request to be paid overtime was not a protected activity because Southard was a bona fide administrative employee and therefore, not entitled to overtime under the FLSA.**

The City Defendants also seek summary judgment in this matter on the basis that Southard was exempt from the overtime requirements of the FLSA as Southard was a bona fide administrative employee. In her response, Southard submits an affidavit which simply recites each of the factors to be considered by the Court in determining whether an individual is employed in an administrative capacity under 29 C.F.R. §541.202 and then summarily and in conclusory fashion denies that Southard engaged in such conduct or actions in her position as city clerk. Southard's position is unavailing.

Most of the job duties of Southard as city clerk in this matter are undisputed, and therefore the question of whether Southard was exempt under the FLSA is a question of law for

the Court. *Spinden v. GS Roofing Prods. Co., Inc.,* 94 F.3d 421, 426 (8th Cir.1996). It is undisputed in this case that Southard had the following job duties as city clerk:

- Served as the department head for the administration department for the City of Oronogo, Missouri and would prepare a proposed budget for her department as well as compiling the city budget. (SOF 16 and Plaintiff's SOF 59)

- Made recommendations including proposed expenditures for office equipment, overtime, office supplies or payroll that would be in her proposed budget, to the Mayor and Board of Alderman. (SOF 17 and 18)

- Prepared and submitted purchase orders requesting the purchase of supplies or equipment that Southard thought were necessary to perform her job and that Southard believed needed to be purchased as well as purchasing supplies for the office based on what she felt the need was for office supplies for individuals to perform their jobs. (SOF 19 and 20).

- Served as the election official for the City of Oronogo; kept the official seal of the city and affixed the seal to ordinances; performed certification and recording of required legal documents; and administered oaths to city officials. (SOF 21)

- Served as custodian of records; produced agendas for meetings of the board of alderman; took and prepared drafts of the minutes of the meetings of the board of alderman; processed contract and legal documents; made deposits on behalf of the City; was an authorized signatory on the court's checking account; paid and filed all taxes and insurance; administered oaths of the city officials; and performed other duties as assigned. (SOF 22)

- Processed payroll and issued payroll checks to the employees of the City that were signed by Mayor Pearish (SOF 26).

- Processed employee benefits including answering an employee's question about their employee benefits if they would come to Southard with questions about their benefits (SOF 28).

- Supervised the daily operations of the utility clerk and shared supervision of the daily operations of the treasurer with the chief of police (SOF 35).

- Determined whether or not the utility deposit returns were accurate and if they were inaccurate gave them back to the utility clerk to be corrected (SOF 36).

- Counseled those employees she supervised on their job performance. (SOF 37)

It is also undisputed that Southard was issued a Visa credit card held in the City's name but bearing Southard's name with a credit limit of $2,000-$5,000 to make purchases when Southard was traveling for work. (SOF 29)  Southard would in fact make purchases using the Visa credit card when traveling and other purchases without prior approval.    (SOF 30 and 31).  Southard also was a signatory on the municipal court checking account as well as the City's Wal-Mart account, and would make purchases on behalf of the City on the accounts for which she was a signatory as well as using the Visa credit card.. (SOF 32 and 33)

While Southard characterizes these job duties as clerical or secretarial and argues that her employment is specifically excluded from the definition of "the exercise of discretion," other jurisdictions addressing this issue have held that such job duties are consistent with an individual employed as a bona fide administrative employee under the FLSA.  *See Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481 (E.D.N.Y. 2012) (holding that plaintiff's duties included

Case 3:12-cv-05027-SWH   Document 69   Filed 12/20/12   Page 31 of 37

supervising and drafting of the budget, opening bank accounts and signing checks clearly relate directly to the management and general business operations of the employer).

Furthermore, Southard's involvement in preparing a budget for the administrative department as well as the City and her supervision of the employees in the administrative department (Pam Hetzel and Cyndi Owings) satisfy the second prong of the primary duties test— whether she had "discretion and independent judgment." *Id*. Drafting a budget also constitutes a "major assignment" in the operations of the City, and demonstrates "authority to commit the employer in matters that have significant financial impact." *Id* Moreover, Southard's responsibility over the budget-drafting process demonstrates that Southard had "authority to formulate, affect, interpret, or implement management policies or operating practices," since determining how to allocate the City's resources may substantially impact policies and operating practices. *Id*. Additionally, this duty implicates Southard's involvement in the City's long- and short-term business objectives. *Id*.

Further evidencing the exercise of discretion and independent judgment by Southard is the fact that when Southard prepared draft minutes of the board of alderman, Southard would initially determine what information to include in the draft of the minutes. (SOF 24). These minutes are the official record of the City. Southard was also involved in training employees that she supervised including determining the policies and procedures they needed to follow (SOF 37, 50 & 51), and reviewing the work of employees to ensure that it was performed properly and consistent with the policies and procedures (SOF 36, 52 & 54). Southard also advised both the mayor and the board of aldermen as to an employee's job performance (SOF 48). Southard once again attempts to downplay these facts as ministerial in nature; however, these facts establish that Southard exercised discretion on matters of significance.

Southard also argues that her job duties including making purchases including office supplies, preparing a proposed budget, opening accounts, processing payroll and employee benefits did not involve the exercise of discretion and independent judgment because the mayor and board of aldermen were the final decision making authority. This argument sails wide of its intended mark.

"The term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." *See Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1067 (D. Minn. 2011). The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. 29 C.F.R. § 541.202(c). Final decision-making authority is not a prerequisite to a finding of the exercise of discretion. *See, e.g., Dymond v. U.S. Postal Serv.,* 670 F.2d 93, 96 (8th Cir.1982). The discretion to make recommendations can suffice. *Cruz*, 764 F. Supp. 2d at 1067.

Here, the uncontroverted facts establish that Southard made recommendations to the board of aldermen and the mayor when she prepared a proposed budget for the administrative department. (SOF 16-18). Southard also made recommendations to the City when Southard would submit purchase orders for approval as to supplies and office equipment that were necessary for Southard to perform her job. (SOF 19-20). Southard also on occasion would address complaints from citizens/customers of the Coty before notifying the mayor of the complaint. (Resp. to Plaintiff's SOF 73). Southard also advised the Mayor and the board of aldermen of Linda Lacy's job performance at the meeting where the decision to terminate Linda Lacey's employment was made. (SOF 48-49). Although Southard may not have had ultimate decision making authority over each of these areas, without question the uncontroverted facts

establish that Southard exercised discretion and independent judgment in her position as city clerk and therefore, was exempt from the overtime requirements of the FLSA as a bona fide administrative employee. Summary judgment in favor of the City Defendants is proper.

      **C.**     **Bruce Richardson and Bob Russell are entitled to qualified immunity.**

Individual defendants Bruce Richardson and Bob Russell also seek summary judgment in this matter on the basis that they are entitled to qualified immunity. Southard and the City Defendants agree that the proper inquiry is whether Russell and Richardson violated a clearly established right under the FLSA at the time they voted not to reappoint Southard as city clerk. In her response, Southard argues that her rights under the FLSA were clearly defined, and therefore, Russell and Richardson are not entitled to qualified immunity. However, as set forth in the City Defendants' motion, Southard's alleged workplace complaints are not protected activity under the FLSA and were not a protected activity at the time Russell and Richardson voted not to reappoint Southard. Therefore, summary judgment in favor of defendant's Bob Russell and Bruce Richardson on Southard's claims under the FLSA is appropriate as they are entitled to qualified immunity because they did not violate a clearly established right.

      **D.**     **Southard's claim for retaliation under the MHRA fails as a matter of law as Southard cannot present sufficient evidence that her alleged complaint of gender discrimination contributed to the failure to reappoint her as city clerk.**

Not only do the City Defendants seek summary judgment on Southard's claim for retaliation under the FLSA, the City Defendants also seek summary judgment on Southard's claim for retaliation under the Missouri Human Rights Act (MHRA).[4] To make a submissible claim for retaliatory discharge under the MHRA, Southard is required to establish that: (1) the

---

[4] After the filing of the City Defendants' motion for summary judgment, Southard filed her motion to voluntarily dismiss her claim for gender discrimination. Therefore, the City Defendants do not address this claim in their response.

City terminated her employment, (2) her complaint of gender discrimination was a contributing factor in the termination, and (3) she sustained damage as a direct result of the conduct. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 866 (Mo. App. E.D. 2009).

In her response, Southard relies on the same flawed argument in support of her claim for retaliation under the MHRA as she does in support of her claim for retaliation under the FLSA. Namely, that the reasons given by the board of aldermen for not reappointing Southard as city clerk are false. However, as discussed above, Southard also does not allege that the reasons given by the City Defendants were not and are not sufficient to support the City Defendant's refusal to reappoint Southard to the position of city clerk. Nor does Southard present any evidence, other than her own self-serving statements, that the reasons given by the City Defendants for not reappointing Southard were pretext.

The uncontroverted facts before the Court establish that the City Defendants voted not to reappoint Southard as city clerk because Southard was impolite and/or rude when interacting with the public and because Southard had issues getting along with other employees of the City. (SOF 98 and 106). The City Defendants' knowledge came from personal experience with Southard (Josh Stiffler) as well as information that they received from other city employees (Cyndi Owings and Jeff Fries). Other than Southard's denials, there is no evidence or information before the Court that the employees who complained about Southard's conduct or informed the City Defendants that Southard had difficulty getting along with fellow employees and the public were lying or not being truthful. There is also no evidence before the Court that the City Defendants did not believe this information when it was provided to them. Quite simply, the uncontroverted facts establish that the board of alderman had sufficient and non-discriminatory reasons not to reappoint Southard as city clerk, and Southard's alleged complaints

of gender discrimination were not a contributing factor in not reappointing Southard as city clerk. Southard has failed to meet her burden and come forward with any evidence that raises a question of material fact that her alleged complaints of gender discrimination was a contributing factor in refusing to reappoint her as city clerk. Therefore, summary judgment in favor of the City Defendants is appropriate.

For the foregoing reasons, defendants the City of Oronogo, Bob Russell and Bruce Richardson pray for this Court's order granting summary judgment in favor of Defendants and against Plaintiff Lorinda Southard on all claims in this matter.

Respectfully submitted,

/s/ William P. Denning
William P. Denning,        MO #52869
Sanders Warren & Russell LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:    (913) 234-6100
Facsimile:     (913) 234-6199
w.denning@swrllp.com
**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of December, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Daniel K. Wooten
Amanda M. Dumey
Neale & Newman, LLP
1949 E. Sunshine, Suite I-130
Springfield, Missouri 65804
dwooten@nnlaw.com
***ATTORNEYS FOR PLAINTIFF***

*/s/ William P. Denning*
Attorney for Defendants