IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| LORINDA SOUTHARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-05027-CV-SW-SWH |
| | ) |
| THE CITY OF ORONOGO, et al., | ) |
| | ) |
| Defendants. | ) |

ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (doc #58). Specifically, defendants request the entry of summary judgment on plaintiff's claim for retaliation under the Fair Labor Standards Act ("FLSA") for the following reasons:

      1.    Southard did not engage in a protected activity under the FLSA as her request for overtime was not outside the scope of her normal job duties;

      2.    there was no causal connection between the failure to reappoint Southard as city clerk and her alleged complaints that she was entitled to overtime;[1]

      3.    Southard was not entitled to overtime because she met the administrative exemption from the overtime requirements of the FLSA; and

      4.    individual defendants Bob Russell and Bruce Richardson are entitled to qualified immunity on Southard's claim for retaliation under the FLSA.

(Defendants' Motion for Summary Judgment (doc #58) at 1-2)

---

[1] In their briefs, defendants state that they will assume that plaintiff is able to establish a prima facie case of retaliation under the FLSA, thus defendants must assume that plaintiff has shown a causal connection. (Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 30; Defendants' Reply to Plaintiff's Suggestions in Opposition to Defendants' Motion for Summary Judgment (doc #69) at 21)

Defendants request the entry of summary judgment on plaintiff's claim for gender discrimination and retaliation under the Missouri Human Rights Act for the following reasons:

> 1. Southard cannot establish that her gender played a contributing role in the alleged failure to pay her overtime as she was not treated differently from similarly situated males;[2] and
>
> 2. Southard cannot present sufficient evidence to establish that her alleged complaints of gender discrimination [were] a contributing role in the board of aldermen voting not to reappoint her as city clerk.

(Id. at 2)

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted when the pleadings and evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The nonmoving party may not rest upon allegations or general denials, but must come forward with specific facts to prove that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The Court must review the facts in the light most favorable to the party opposing the motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

With these standards in mind, the Court will address each of defendants' arguments for summary judgment. The Court notes that it has reviewed defendants' Statement of Uncontroverted Material Facts, Plaintiff's Statement of Additional Uncontroverted Material Facts, each parties' responses to the opposing parties' facts and all of the supporting documents

---

[2] On December 28, 2012, the Court granted Plaintiff's Motion for Voluntary Dismissal of Count III of Plaintiff's Petition. Count III was a Claim for Sex Discrimination Under the Missouri Human Rights Act. Thus, this argument is now moot.

presented by the parties in this case. The Court will cite to only those facts and evidence it finds pertinent to the issues which have been raised by the parties, rather than presenting the Court's own Statement of Uncontroverted Material Facts.

## I. RETALIATION CLAIM UNDER THE FLSA

In <u>Grey v. City of Oak Grove</u>, 396 F.3d 1031 (8th Cir. 2005), the Court provided the following guidance for analyzing a motion for summary judgment on a claim of retaliation under the FLSA:

> The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint … under or related to this chapter." 29 U.S.C. § 215(a)(3). We apply the familiar <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 … (1973) … burden-shifting framework to appellant's retaliatory discharge claim. … To establish a prima facie case of retaliation, appellant had to show that he participated in statutorily protected activity, that appellees took an adverse employment action against him, and that there was a causal connection between them. Appellant's FLSA claim for overtime compensation was protected activity, and his discharge was an adverse action. Like the district court, we will assume for purposes of analysis that sufficient evidence of a causal connection between the protected activity and discharge existed to establish a prima facie case. Appellees articulated legitimate, non-retaliatory reasons for appellant's discharge, that is, he violated the city personnel and police department policies. Under the <u>McDonnell Douglas</u> framework, the sole remaining issue was retaliation or, more precisely, whether the legitimate, non-retaliatory reasons articulated by appellees were not the true reasons for discharge, but merely a pretext for retaliation. In the summary judgment context, the issue was whether the evidence was sufficient to create a genuine issue of material fact on the question whether appellees discharged appellant in retaliation for making his FLSA claim for overtime compensation.

<u>Grey</u>, 396 F.3d at 1034-35.

### A. Statutorily Protected Activity

Defendants' argument related to statutorily protected activity appears to be three-fold: (1) that plaintiff's workplace complaint that she was not being paid overtime compensation in accordance with the FLSA fails as a matter of law because a workplace complaint does not

3

constitute the filing of a complaint under the FLSA; (2) that plaintiff did not engage in any activity that could reasonably be perceived as asserting rights under the FLSA by simply requesting that her banked overtime hours be paid; and (3) that plaintiff was merely performing her job duties as city clerk when she submitted her banked overtime hours for payment. (Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 25-29) The Court will address each of these arguments.

First, the Court has previously determined that workplace complaints are sufficient to trigger the protection of the FLSA's antiretaliation provision. (<u>See</u> Order dated December 28, 2012 (doc #73) at 4)

Next, defendants would have the Court presume that plaintiff did not assert any rights under the FLSA or claim any entitlement to overtime pay under the FLSA, but instead that plaintiff merely presented banked overtime hours for payment. The facts before the Court suggest that originally, plaintiff was merely presenting her banked overtime hours for payment when she approached Mayor Perish in the summer of 2010. (<u>See</u> Defendants' Fact No. 68 (doc #59 at 16); Plaintiff's Response to Defendants' Fact No. 68 (doc #65 at 20)) August 2010 was the first time that Southard allegedly made any complaint that she was not being paid overtime or a complaint that she was entitled to overtime. (<u>See</u> Defendants' Fact No. 70 (doc #59 at 17); Plaintiff's Response to Defendants' Fact No. 70 (doc #65 at 21)) A Memorandum, dated August 23, 2010, from plaintiff to the City Council provides:

> To date I have accrued 167.65 hours of comp time. Every pay period more hours accrue. I am requesting to be paid for ½ of my comp time that is on the books while banking the balance to be taken off at a later date. The Police Chief and Utility Supervisor are paid weekly for their overtime. I am also requesting that my future overtime be paid during the week accrued. Maximum comp time that can be accrued is 240 hours.

4

(Doc #65-17) A Memorandum, dated September 8, 2010, from plaintiff to the City Council provides:

> To date I have accrued 173.9 hours of banked time. Every pay period more hours accrue. Federal Wage & Hour have determined that I am eligible for overtime. The City <u>does not</u> have a policy for accrual of comp time or use of comp or flex time. I would like to see a policy implemented that would be relevant to all employees. I am requesting to be paid for my banked time that is on the books. The Police Chief and Utility Supervisor are paid weekly for their overtime. I am also requesting that my future overtime be paid during the week accrued the same as the other department heads.

(Doc #65-18) The Minutes of the September 13, 2010, Session of the Board of Aldermen of the City of Oronogo provide:

> Treasurer Cyndi Owings presented a request for banked time payout from City Clerk Lorinda Southard to council. She stated she had verified time and the payout for overtime is $3,272.80. Alderman Russell stated he felt the city clerk performs management decision and now supervises two full time employees. Alderman Langford stated he felt comp time is exempt. Mayor tabled discussion until the next council meeting and asked the city attorney look into the issue of exempt status. Alderman Russell stated the banked hours have nothing to do with the good job the city clerk is doing.

(Doc #59-16 at 3) While defendants argue that these minutes "do not make any reference to Southard indicating that she was entitled to overtime pay under the FLSA,"[3] the Court finds the mere presentation of the request for payment to the Board of Aldermen to be evidence that plaintiff was claiming an entitlement to overtime pay under the FLSA. The Minutes of the October 11, 2010, Session of the Board of Aldermen of the City of Oronogo provide:

> City Attorney Brown said he had reviewed Federal, State and Local laws regarding salaried positions and who is exempt from overtime. He stated upon reviewing all information the City Clerk of Oronogo is not exempt from … overtime and is due wages in excess of 40 hours a week at time and one half the rate of pay. He said the City Clerk does not fall under the Executive exemption because she does not manage the city. He said the position would most likely fall under the Administrative exemption. Alderman Richardson said he read the city

---

[3](Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 27)

personnel manual and he interpreted it to say salaried persons are not subject to overtime. Alderman Russell said he felt the city clerk had administrative decision making authority in the office. City Attorney Brown said that six of the ten qualifications for Administrative Decisions are not met, therefore the city clerk does not have administrative decision making authority. Alderman Richardson said he talked with other city clerks in surrounding towns and they are salaried. He said he had no problem [with] the city clerk's work and other city clerks spoke highly of Oronogo's city clerk.[4] He asked Ms. Southard if she liked her job, and she answered "yes, I like my job, but I do not like the discrimination between the women and the men." She explained the Police Chief and officers and the Public Works Superintendent and laborer are allowed overtime and are paid at time and a half. The women are told they have to take any overtime off during the work week it is accrued. Alderman Russell asked the Court Clerk if she gets paid overtime and she said she has to take time off during the work week it is accrued. She said she was told when she was hired she would not get paid overtime. Discussion followed on overtime accumulation. Alderman Langford said he thought the city clerk would fall under the Executive exemption and City Attorney Brown said she did not. Alderman Butler stated the issue needed to be resolved and asked what the next move was. City Attorney Brown said there were two issues: 1) resolve the overtime claim by the City Clerk and 2) set a policy on overtime that would apply to all employees. Alderman Russell said he had a problem with the two hours between 5 PM and 7 PM on council nights and the council needed to resolve the issue before moving on. Alderman Langford moved to postpone further discussion until the next council meeting. Alderman Butler seconded. Motion carried with five yes and one no (Richardson) votes. Alderman Russell asked if no conclusion could be reached by the next council meeting what were the options. Attorney Brown said there were no options, a decision had to be made on payment of overtime and a policy needed to be made for future.

(Doc #59-18 at 2-3) On October 11, 2010, plaintiff clearly asserted her rights under the FLSA and claimed an entitlement to overtime pay under the FLSA.

Finally, defendants argue that plaintiff Southard, like the plaintiff in McKenzie v. Renberg's Inc., 94 F.3d 1478 (10th Cir. 1996), cert. denied, 520 U.S. 1186 (1997), was merely performing her job duties when she raised FLSA issues. In McKenzie, the court held that the

---

[4] The minutes of the next session contain the following correction to this statement: "Alderman Richardson said he did not say in the previous minutes that other city clerks spoke highly of Oronogo's City Clerk, only one clerk, Lynn Campbell. He said that if he is being quoted, 'get it right.'" (Doc #69-8 at 1)

6

plaintiff did not engage in protected activity under the FLSA's antiretaliation provision when, in her capacity as personnel director, she undertook to advise defendant that its wage and hour policies were in violation of the FLSA. Id. at 1481. The court found:

> … McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and *asserting* a right adverse to the company. McKenzie did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else. Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations.

Id. at 1486 (emphasis in original). Here, the Court has been presented with no facts to suggest that plaintiff Southard was merely representing the company in her capacity of city clerk when she presented her banked overtime hours for payment and then expressed her dissatisfaction with the differences in how the city handled overtime for male and female employees. Plaintiff Southard's workplace complaint was clearly made on her own behalf. The Court finds that plaintiff's FLSA claim for overtime compensation was statutorily protected activity.

B. Causal Connection

As set forth above, to establish a prima facie case of retaliation, plaintiff Southard must show that she participated in statutorily protected activity, that defendants took an adverse employment action against her and that there was a causal connection between them. Plaintiff's FLSA claim for overtime compensation was protected activity and her failure to be reappointed was an adverse action. For purposes of their motion for summary judgment, defendants assume that plaintiff is able to show a causal connection between the statutorily protected activity and the adverse employment action in that defendants assume that plaintiff is able to establish a prima facie case of retaliation under the FLSA. (Defendants' Suggestions in Support of Their

7

Motion for Summary Judgment (doc #59) at 30; Defendants' Reply to Plaintiff's Suggestions in Opposition to Defendants' Motion for Summary Judgment (doc #69) at 21)

    C.    Pretext

After a prima facie case of retaliation has been established, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. See Stewart v. Independent School District No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007). If the defendant can show a legitimate, non-retaliatory reason for the action, the burden returns to the plaintiff. Id. In Wallace v. DTG Operations, Inc.,[5] the Eighth Circuit described what a plaintiff must show to meet this ultimate burden or proof of persuasion:

> [The plaintiff is] left with "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." [Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981).] The Supreme Court has recognized that, at this final stage of the burden shifting analysis, the plaintiff's burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional [retaliation]." Id. (discussing the burden shifting analysis in the context of a discrimination claim). …
>
> There are at least two routes by which a plaintiff may demonstrate a material question of fact at this final stage of the analysis. First, a plaintiff may succeed "indirectly by showing that the employer's proffered explanation is unworthy of credence," Burdine, 450 U.S. at 256, because it has "no basis in fact." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002). Second, a plaintiff may succeed "directly by persuading the court that a [prohibited] reason more likely motivated the employer." Burdine, 450 U.S. at 256. Both of these routes, in effect, amount to a showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action.

Wallace, 442 F.3d at 1120. Accord Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th Cir.), cert. denied, 132 S.Ct. 513 (2011).

---

[5] 442 F.3d 1112 (8th Cir. 2006), *abrogated on other grounds by* Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011).

Here, defendants have articulated the following non-retaliatory reasons for their failure to reappoint plaintiff: plaintiff failed to attend meetings of the city clerks' association; plaintiff was impolite and/or rude when interacting with the public and plaintiff did not properly supervise and get along with other employees of the City. (See Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 30) The Court has reviewed the evidence provided by defendants as support for each of these reasons as well as the evidence presented by plaintiff to counter the evidence. The Court finds that there are genuine issues of material fact for trial which preclude the Court from granting summary judgment in favor of defendants. For instance, the following issues (which listing is not intended to be exhaustive) which relate to defendants' proferred reasons are in dispute:

    1. At what point the Board of Aldermen advised plaintiff that she was required to attend city clerks' association meetings;

    2. Why plaintiff would have been required to attend city clerks' association meetings when the prior city clerk was not required to attend these meetings;

    3. Whether the Board of Aldermen honestly believed that plaintiff told Cyndi Owings, the city treasurer who was supervised in part by plaintiff, that she was dressed like a slut when the Board conducted no independent investigation nor asked plaintiff for her side of the story;

    4. Whether Alderman Russell honestly believed that plaintiff had any issues getting along with the police chief when his belief admittedly came solely from conversations he had with Ms. Owings; and

    5. Whether the Board of Aldermen honestly believed that plaintiff handled the incident where a customer was erroneously charged a late fee (which was reimbursed to the customer the same day) inappropriately when the Board failed to ask plaintiff for her side of the story.

9

Further, the following issues (again which listing is not intended to be exhaustive) which relate to whether defendants' decision was more probably than not based on illegal discrimination are in dispute:

      1. Whether Alderman Richardson's question to plaintiff if she liked her job was intended as a threat;

      2. Why the Board of Alderman failed to follow the advice of the City Attorney;

      3. Why the Corrective Action Plan set forth in the City of Oronogo Employee Handbook was not followed with respect to plaintiff; and

      4. Why plaintiff is the only person who has ever been nominated by the mayor for a position at the City of Oronogo who has not been approved by the Board of Aldermen.

Defendants also argue that a gap in time between the protected activity and the adverse employment action weakens any inference of retaliation. (See Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 32) The last time plaintiff made a complaint to the City that she was not being paid overtime was November 11, 2010. (See Defendants' Fact No. 89 (doc #59 at 20); Plaintiff's Response to Defendants' Fact No. 89 (doc #65 at 25)) On April 11, 2011, the Board of Aldermen voted not to approve the mayor's appointment of plaintiff as City Clerk. (See Defendants' Fact No. 93 (doc #59 at 20); Plaintiff's Response to Defendants' Fact No. 93 (doc #65 at 26)) Given that the Board of Aldermen voted not to reappoint plaintiff at the first opportunity her reappointment came up following her complaint to the City, which was only five months from plaintiff's last complaint, the Court does not find the gap in time significant nor a reason to remove the case from a jury's consideration. The Court finds that plaintiff has a case for the jury on the issue of retaliation under the FLSA.

10

Case 3:12-cv-05027-SWH   Document 112   Filed 01/29/13   Page 10 of 18

## II. ADMINISTRATIVE EMPLOYEE EXEMPTION

In <u>Jarrett v. ERC Properties, Inc.</u>, 211 F.3d 1078 (8th Cir. 2000), the Court set forth the following general guidance for exemption questions under the FLSA:

> The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. <u>See</u> 29 U.S.C. § 207(a). The statute exempts certain employees from its overtime protections, including "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Secretary of Labor has promulgated extensive regulations defining the types of employees who fall within these exemption categories. <u>See</u> 29 C.F.R. pt. 541 ….

211 F.3d at 1081.

> The regulation setting forth the "General rule for administrative employees" provides:
>
> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> > (1) Compensated on a salary or fee basis at a rate of not less than $455 per week … exclusive of board, lodging or other facilities;
> >
> > (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> >
> > (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

The parties agree that plaintiff met the first two requirements set forth in section 541.200. The issue before the Court is whether plaintiff also met the third requirement, i.e. whether plaintiff's primary duty included the exercise of discretion and independent judgment with respect to matters of significance. "Given the remedial nature of the FLSA, exemptions under the Act are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and

11

spirit.'" In re RBC Dain Rauscher Overtime Litigation, 703 F.Supp.2d 910, 922 (D. Minn. 2010) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)). The employer has the burden of establishing that it is entitled to the benefit of the exemption. See Renfro v. City of Emporia, 948 F.2d 1529, 1540 (10th Cir. 1991); In re RBC Dain Rauscher Overtime Litigation, 703 F.Supp.2d at 923. "Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law." Jarrett v. ERC Properties, Inc., 211 F.3d 1078, 1081 (8th Cir. 2000).

Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance have been set out in the regulation entitled: "Discretion and independent judgment." That regulation provides the following non-exhaustive listing:

1. whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

2. whether the employee carries out major assignments in conducting the operations of the business;

3. whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;

4. whether the employee has authority to commit the employer in matters that have significant financial impact;

5. whether the employee has authority to waive or deviate from established policies and procedures without prior approval;

6. whether the employee has authority to negotiate and bind the company on significant matters;

7. whether the employee provides consultation or expert advice to management;

12

8. whether the employee is involved in planning long- or short-term business objectives;

9. whether the employee investigates and resolves matters of significance on behalf of management; and

10. whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). Further, the regulation provides: "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c).

Defendants argue that plaintiff met a majority of the factors set forth in section 541.202(b) and, therefore, was exempt from overtime under the FLSA. (See Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 38) Specifically, defendants contend that plaintiff had the following job duties as city clerk:

- Served as the department head for the administration department for the City of Oronogo, Missouri and would prepare a proposed budget for her department as well as compiling the city budget.

- Made recommendations including proposed expenditures for office equipment, overtime, office supplies or payroll that would be in her proposed budget, to the Mayor and Board of Aldermen.

- Prepared and submitted purchase orders requesting the purchase of supplies or equipment that Southard thought were necessary to perform her job and that Southard believed needed to be purchased as well as purchasing supplies for the office based on what she felt the need was for office supplies for individuals to perform their jobs.

- Served as the election official for the City of Oronogo; kept the official seal of the city and affixed the seal to ordinances; performed certification and recording of required legal documents; and administered oaths to city officials.

- Served as custodian of records; produced agendas for meetings of the board of aldermen; took and prepared drafts of the minutes of the meetings of the board

13

> of aldermen; processed contract and legal documents; made deposits on behalf of the City; was an authorized signatory on the court's checking account; paid and filed all taxes and insurance; administered oaths of the city officials; and performed other duties as assigned.
>
> - Processed payroll and issued payroll checks to the employees of the City that were signed by Mayor Pearish.
>
> - Processed employee benefits including answering an employee's question about their employee benefits if they would come to Southard with questions about their benefits.
>
> - Supervised the daily operations of the utility clerk and shared supervision of the daily operations of the treasurer with the chief of police.
>
> - Determined whether or not the utility deposit returns were accurate and if they were inaccurate gave them back to the utility clerk to be corrected.
>
> - Counseled those employees she supervised on their job performance.
>
> - Southard was issued a Visa credit card held in the City's name but bearing Southard's name with a credit limit of $2,000 to $5,000 to make purchases when Southard was traveling for work.
>
> - Southard was a signatory on the municipal court checking account as well as the City's Wal-Mart account.

(Defendants' Reply to Plaintiff's Suggestions in Opposition to Defendants' Motion for Summary Judgment (doc #69) at 30-31)

Plaintiff responds that her work as City Clerk was almost exclusively clerical or secretarial work. (Plaintiff's Response to Defendants' Motion for Summary Judgment (doc #65) at 60) "The exercise of discretion and independent judgment … does not include clerical or secretarial work." 29 C.F.R. § 541.202(c). Further, while plaintiff does not dispute that she performed the job duties listed by defendants, she does dispute that these job duties, as she performed them, met any of the ten factors listed in 29 C.F.R. § 541.202(b). Plaintiff contends that she had very limited authority to make independent choices. The deposition testimony of

14

the mayor supports plaintiff's contentions. For instance, when asked if he ever gave plaintiff the authority to resolve community complaints herself, the mayor responded: "Each and every complaint was supposed to be referred to me." (Doc #65-4 at 7) When the mayor was asked if plaintiff had the authority on her own without seeking his advanced approval to go to a store and open up a line of credit on behalf of the City, the mayor responded: "No." (Id. at 9) When the mayor was asked if plaintiff had the authority to fire the staff under her supervision without his advanced approval, the mayor responded: "No." (Id. at 10) When the mayor was asked if there was ever a time that plaintiff disciplined the staff under her supervision (i.e. dropped in pay, wrote up, anything along those lines) without seeking his advanced approval, the mayor responded: "No." (Id.) Finally, the determination by the City Attorney for the City of Oronogo (who would have had an opportunity to see first-hand how plaintiff performed her job duties and who performed his analysis per the request of the Board of Aldermen) that plaintiff did not meet the administrative employee exemption is further evidence that supports plaintiff's description of her job duties.

The Court finds that it will need to assess the facts as they are presented at trial and perhaps enlist the aid of the jury as fact finder to resolve the disputes surrounding the nature of plaintiff's job duties before it is in a position to rule the question whether plaintiff is an exempt administrative employee under the FLSA. Thus, this issue is reserved for trial.

### III. QUALIFIED IMMUNITY

Defendants argue that Bob Russell and Bruce Richardson, two of the six members of the Board of Aldermen who voted against plaintiff's reappointment as city clerk, are entitled to qualified immunity on plaintiff's FLSA claims against them in their individual capacities as

plaintiff's workplace complaints were not a clearly protected activity under the FLSA. (See Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 41)

In <u>Sexton v. Martin</u>, 210 F.3d 905 (8th Cir. 2000), the Court set forth the following guidance with respect to the doctrine of qualified immunity:

> Under the doctrine of qualified immunity, state actors are protected from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 … (1982) … The qualified immunity inquiry is a two-step process. First, this Court must ascertain whether the plaintiffs have asserted a violation of a constitutional or statutory right. … Second, we must determine whether that constitutional right was clearly established at the time that the plaintiffs were discharged. … "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Buckley v. Rogerson</u>, 133 F.3d 1125, 1128 (8th Cir. 1998)(quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 … (1987)).

<u>Sexton</u>, 210 F.3d at 909.

In ruling on Defendants' Motion for Partial Judgment on the Pleadings or in the Alternative Motion to Dismiss Plaintiff's Claim for Retaliation Under the FLSA (doc #38), the Court determined that workplace complaints are sufficient to trigger the protection of the FLSA's antiretaliation provision. (<u>See</u> Order dated December 28, 2012 (doc #73) at 4) However, as evidenced by the cases cited by defendants in their Motion for Partial Judgment on the Pleadings, the issue of whether a workplace complaint constituted the filing of a complaint under the FLSA was not so clearly established at the time the Board of Aldermen refused to reappoint plaintiff that a reasonable official would have understood that plaintiff's workplace complaint triggered the protection of the FLSA's antiretaliation provision. Thus, defendants are entitled to qualified immunity on plaintiff's FLSA claims against them in their individual capacities.

## IV. RETALIATION CLAIM UNDER THE MHRA

To establish a prima facie case of retaliation under the Missouri Human Rights Act ("MHRA"), an employee must demonstrate (1) that she complained of discrimination; (2) that the employer took adverse action again her; and (3) that the adverse action was causally linked to the complaint of discrimination. See Thompson v. Western-Southern Life Assurance Co., 82 S.W.3d 203, 207 (Mo. Ct. App. 2002). Defendants argue that because they have provided non-retaliatory reasons for the adverse employment action, plaintiff cannot demonstrate that the adverse action was causally linked to the complaint of discrimination. (See Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 46-47) However, as set forth above, the Court has reviewed the evidence provided by defendants as support for each of these reasons as well as the evidence presented by plaintiff to counter the evidence. The Court finds that there are genuine issues of material fact for trial with respect to defendants' proferred non-retaliatory reasons for the adverse employment action.

Defendants further argue that the fact that plaintiff was replaced with a female is evidence that plaintiff was not retaliated against based upon her complaints of discrimination. (See Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 47) This argument totally misses the point of plaintiff's claim. Plaintiff has not alleged that she was terminated because she was a female. Plaintiff has alleged that she was terminated because of her complaints that she was being discriminated against on the basis of her gender/sex.

Finally, defendants argue that the gap in time between the protected activity and the adverse employment action weakens any inference of retaliation. (See Defendants' Suggestions in Support of Their Motion for Summary Judgment (doc #59) at 47) As set forth above, given

17

that the Board of Aldermen voted not to reappoint plaintiff at the first opportunity her reappointment came up following her complaint to the City, which was only five months from plaintiff's last complaint, the Court does not find the gap in time significant nor a reason to remove the case from a jury's consideration. The Court finds that plaintiff has a case for the jury on the issue of retaliation under the MHRA.

V. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (doc #58) is granted in part and denied in part. The motion is granted to the extent that defendants Bruce Richardson and Bob Russell are entitled to qualified immunity on plaintiff's FLSA claims against them in their individual capacities. The remainder of the motion is denied.

          */s/ Sarah W. Hays*
          SARAH W. HAYS
          UNITED STATES MAGISTRATE JUDGE